CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

NOV 0 6 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| C. ALLEN FOSTER, ET AL., | CIVIL NO. 3:08cv00031 |
| *Plaintiffs,* | |
| v. | MEMORANDUM OPINION |
| WINTERGREEN REAL ESTATE COMPANY, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on the Defendants' Motion to Dismiss [docket no. 13]. In June 2008, the Plaintiffs, three individuals, filed a seventeen-count complaint against the Defendants, Wintergreen Real Estate Company and four individuals. Counts one through three of the complaint allege civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, and count eleven alleges a violation of the Federal Lanham Act. The remaining counts allege a variety of fraud, contract, tort, false advertising and conspiracy claims under state common and statutory law. Defendants moved to dismiss all counts of the complaint for failure to state a claim. For the reasons that follow, the Court will grant the Defendants' motion to dismiss the complaint.

## I. BACKGROUND

The suit arises out of the relationship between the Plaintiffs, who are three real estate investors (A. Foster, S. Foster, and Jones), and the Defendants, who are a real estate company (Wintergreen) and its officers, real estate agents and brokers (the individual defendants: Carroll, Hess, Lynn, and Farley). Plaintiffs were real estate investors, and used Defendants as their real

estate agents and brokers for real estate in the Wintergreen Resort area beginning in about June 2003 and continuing for a period of approximately three years. Through the Defendants, Plaintiffs bought and sold numerous pieces of property in the Wintergreen Resort area over those three years. Plaintiffs claim that they incurred extra costs and lost profits as a result of the Defendants' various acts of false advertising, fraud, and breach of contract.

Plaintiffs allege that the Defendants made several statements in order to induce Plaintiffs to use their services, some of which were true and some of which were false. The true statements were: (1) that Defendants were members of the Multiple Listing Service ("MLS"); (2) that Wintergreen was the only real estate company with an office in the Resort, had "inside knowledge" about the real estate market within the Resort, and was therefore the dominant real estate company in the resort; and (3) that Defendant Carroll was the top salesperson at Wintergreen. The false statements included: (1) that Wintergreen created color brochures for all of the properties it sells, and gives the brochures to potential buyers and other real estate brokers; (2) that Wintergreen lists all of its for-sale properties with the MLS; and (3) that Wintergreen features all of its for-sale properties on its real estate television channel. (Compl. ¶ 18.) The Plaintiffs aver that the statement that Defendants were members of the MLS, while true, was intended to lead the Plaintiffs to believe that Defendants complied with the rules, requirements, and customs of membership in the MLS, which included listing all properties for sale. (Compl. ¶ 21.) The Plaintiffs claim that in reliance on these false and misleading statements, which were made on at least two different occasions, they decided to use Wintergreen, and Mr. Carroll specifically, as their real estate broker for their purchases and sales in the Resort.

The Plaintiffs also describe a number of Defendants' practices which were intended to lead Plaintiffs to believe that Defendants were vigorously marketing Plaintiffs' properties, when

in fact, they were not. For each property that the Plaintiffs listed for sale with the Defendants, the Defendants sent Plaintiffs letters stating that the property had been submitted to MLS for listing, and that the other Wintergreen agents had been made aware of the listing. The letters also stated that the property would be advertised on Wintergreen's television channel, and that Wintergreen would produce color brochures about the property, as it did for all properties it had for sale. (Compl. ¶¶ 47-50.)

The Plaintiffs claim that for 13 of the 29 properties they sold through Defendants, Defendants never listed the properties on MLS. For others, they only listed the properties with MLS after they had already found a buyer. For the properties they did list on MLS, they failed to include a picture, so that outside buyers would be less likely to show interest. Plaintiffs allege that all of this was done in order to increase the commissions earned by the Defendants, at the expense of the amount of profit made by the Plaintiffs. (Compl. ¶¶ 63-67.) Further, the Plaintiffs allege that the Defendants never made color brochures for any of the properties, never advertised the properties on their television channel, never distributed any other marketing materials to other brokers or firms, and never otherwise properly marketed Plaintiffs' properties. (Compl. ¶¶ 68-73.) In addition, the Defendants on several occasions violated the terms of the listing agreements by simultaneously representing both buyer and seller (called "dual representation") without Plaintiffs' authorization. (Compl. ¶ 88.) On other occasions, Plaintiffs allege that Defendants used "straw men" to circumvent the contractual prohibition on unauthorized dual representation. (Compl. ¶ 89-91.) The Plaintiffs allege that the Defendants purposefully failed to market Plaintiffs' properties so that they could find a buyer among their existing client pool, and receive a commission from both the seller and the purchaser.

The Plaintiffs allege that the Defendants applied similar practices with respect to

-3-

hundreds of other properties bought and sold by persons other than the Plaintiffs over this three-year period. Plaintiffs base these allegations on information obtained through the public records on the number of sales of property in the Wintergreen Resort area, compared with the number of properties listed through the MLS. The Plaintiffs also rely on interviews with "a number of the sellers," who confirm that they never authorized the Defendants not to list their properties with MLS, and that they expected those properties to be listed with MLS. (Compl. ¶¶ 79-83.)

The Plaintiffs also allege that the Defendants made false statements and concealed material facts in order to induce Plaintiffs into making specific real estate transactions, to Plaintiffs' detriment. For example, the Plaintiffs bought two lots in the Stoney Creek area of the Wintergreen Resort, because the Defendants knowingly concealed the fact that a noisy stump grinder was located nearby. (Compl. ¶¶ 110-115.) As a result, the property values of the lots were significantly lower than the Defendants had led the Plaintiffs to believe. In addition, Plaintiffs purchased two other lots in reliance on Defendants' statements that a nearby property was the "last piece of developable multifamily land left at Wintergreen Resort." (Compl. ¶ 101.) Plaintiffs allege that the Defendants knew this statement was false, because Defendant Farley was simultaneously involved in a deal to develop a separate adjacent parcel for multi-family use. (Compl. ¶ 102.) The Plaintiffs believe that the Defendants concealed this deal because they knew that it would lower the value of the properties sold to the Plaintiffs. (Compl. ¶ 105.) Finally, the Plaintiffs purchased a property at Mountain Inn through the Defendants. However, the Defendants had concealed the fact that they had lost their real estate office in the Mountain Inn. (Compl. ¶ 116.) As a result, the Plaintiffs believed that Defendants would not be able to effectively market their properties. The Plaintiffs allege that they would not have purchased any of these properties if they had been fully informed of all of the material facts.

-4-

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint and does not resolve contests concerning the facts, the merits of claims, or the applicability of defenses. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).  Such motions "should be granted only in very limited circumstances," *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989), and a complaint will survive as long as it sets out facts sufficient for the court to infer that each element of a cause of action is present. *See Wolman v. Tose,* 467 F.2d 29, 33 (4th Cir. 1972).  In considering a Rule 12(b)(6) motion, a complaint is to be construed in the light most favorable to the plaintiff and the court is to assume its factual allegations to be true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir. 1992).  "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted).  Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted).  Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must

"nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974. As the Fourth Circuit has held, a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006).

## III. DISCUSSION

### A. RICO claims

Counts one through three of the complaint set out the Plaintiffs' RICO claims: 1) participating in or conducting a RICO enterprise; 2) investment of proceeds of racketeering activity; and 3) conspiracy to violate RICO.

#### 1. Participating in a RICO enterprise

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962 (c).

In order to state a claim under this subsection, the Plaintiffs must establish the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). The Plaintiffs bring a claim under this provision against the individual defendants only, and allege that Wintergreen is the RICO enterprise. They allege that the pattern of racketeering activity consists of a number of instances of mail and wire fraud, in which the defendants communicated false statements to the Plaintiffs in order to perpetrate a fraud.

The Plaintiffs must also show that they were proximately harmed by the RICO violation. 18 U.S.C. § 1964 (c); *see also Holmes v. Securities Investor Protection Corp.*, 530 U.S. 258, 268

-6-

(1992) (holding that proximate cause is an element of civil RICO claims). "To meet this burden with respect to mail fraud and wire fraud, a plaintiff must *plausibly* allege both that he detrimentally relied in some way on the fraudulent mailing or wire ... and that the mailing or wire was a proximate cause of the alleged injury to his business or property." *American Chiropractic Association v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004).[1] In this case, the Plaintiffs have alleged reliance on the fraud and that the fraud was a proximate cause of the harm they suffered.

a. Enterprise

An enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961 (4). Under 18 U.S.C. § 1962 (c), the person committing the racketeering acts must be separate from the "enterprise" that person participates in or conducts. *United States v. Computer Sciences Corporation*, 689 F.2d 1181, 1190 (4th Cir. 1982), *overruled in part by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990).[2]

In this case, the Defendants argue that because the individuals are employees of Wintergreen, which is alleged to be the RICO enterprise, there is no difference, distinction or separation between them, as required by the statute. They rely heavily on *Computer Sciences* in support of this proposition.[3] In *Computer Sciences*, criminal RICO charges were brought against

---

[1] *But see Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2139 (2008) ("The gravamen of the offense [of mail fraud] is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information." (internal quotations and citations omitted) (internal modifications omitted)). Further, the Supreme Court held that no showing of actual reliance on the false statements is required to establish predicate acts of mail or wire fraud. *Id.*

[2] *Busby* overruled the part of *Computer Sciences* that dealt with this issue as it applies to 18 U.S.C. § 1962 (a), the investment provision, discussed *infra*.

[3] Defendants also rely on several other cases, none of which are applicable to the facts presented here. For example, Defendants cite to *Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.*, 819 F.2d 1279 (4th Cir. 1987) in support of their argument that employees of a corporation cannot be separate from the corporation for purposes of RICO. However, that case involved a franchise corporation and its franchisees. Further, the case does not specify

-7-

a corporation and six individuals, who were employees of the corporation. *See United States v. Computer Sciences Corp.*, 511 F.Supp. 1125 (E.D.Va.1981). The Fourth Circuit dismissed the charges against the corporation, holding that the corporation could not be both a defendant and the RICO enterprise required by 18 U.S.C. § 1962 (c). *Computer Sciences*, 689 F.2d at 1190. However, the court did not dismiss the charges as to the individual defendants.

The Defendants misunderstand the Fourth Circuit's holding in *Computer Sciences*. The court did not hold that employees of a corporation are never separate entities from that corporation; rather, it held that the corporation itself could not be both a RICO enterprise and a participant in the conduct of that RICO enterprise. *Id*. This is further clarified because the court did not dismiss the charges against the individual defendants, accused of participating in the conduct of the RICO enterprise, their employer. *Id*. at 1191.

The same facts as in *Computer Sciences* are at issue in this case: the individual defendants were employees and officers of Wintergreen, which is alleged to be the RICO enterprise. The employment relationship does not eliminate the distinction required by the statute. Rather, some relationship between the individuals and the enterprise is required by the plain language of the statute. *See Busby*, 896 F.2d at 841 ("[18 U.S.C. § 1962](c) . . . requires a *relationship* between the 'person' and the 'enterprise' (i.e., employer-employee). . ." (emphasis in original)). Therefore, the Plaintiffs have sufficiently alleged a RICO enterprise that is separate

---

which provision of RICO it was dealing with, a detail which becomes important in light of the *Busby* case. Overall, the court's holding is too vague to determine exactly how it might apply to this case. Finally, this case is flagged as having been overruled by *Busby*, which the Defendants failed to mention.

Defendants also cite to *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994). In that case, the plaintiffs sought to hold a corporate entity liable under RICO, and alleged that the RICO enterprise consisted of the corporate entity itself, in association with its employees and agents. *Id*. at 344. The court held that, "where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation." *Id*. However, the main distinction between *Riverwoods* and this case is that in *Riverwoods*, the corporate entity was the defendant, and in this case, only the individual defendants are named in this count of the complaint. Therefore, the holding in *Riverwoods* deals with a case in which the plaintiffs were trying to construe the same group of actors as both the person and the enterprise. That is not the case here.

-8-

and distinct from the persons committing the racketeering activity.

b. Racketeering activity

Racketeering activity is defined to cover a broad range of illegal activities commonly engaged in by members of organized crime. It includes mail fraud and wire fraud, as prohibited by 18 U.S.C. §§ 1341 and 1343, respectively. 18 U.S.C. § 1961 (1).

In this case, Plaintiffs allege various acts of mail and wire fraud by the Defendants. (*See* Compl. ¶¶ 16-21, 47-48, 79-83, 100-106.) The essential elements of the offense of mail fraud are: "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8, (1954); *Linden v. United States*, 254 F.2d 560, 567 (4th Cir.1958). The elements for wire fraud are identical, except for the obvious distinction that use of electronic or telephonic means of communication, rather than the mail, is required. *John C. Holland Enterprises, Inc. v. J.P. Mascaro & Sons, Inc.*, 653 F.Supp. 1242, 1249 (E.D.Va. 1987).

The Plaintiffs allege that the information provided to them by Defendants over the phone, fax, or email, or by U.S. mail, was false, included material misrepresentations or concealed material facts, was intended to deceive the Plaintiffs, and did in fact deceive the Plaintiffs. The Plaintiffs allege that the Defendants' statements, made on various occasions, about their membership in the MLS, their marketing practices, and their position and status in the Wintergreen Resort real estate market were false or misleading. The Plaintiffs also allege that, because they did not live the Wintergreen area, the mails and wires were necessarily used on numerous occasions, in furtherance of Defendants' attempts to defraud them. The Plaintiffs allege with specificity as to date, manner, and content, at least one occasion when these statements were made by Defendant Carroll over the phone (Compl. ¶¶16-21), and at least two

occasions when they were made in writing sent through the mail (Compl. ¶¶ 47-48). Taking the allegations in the complaint as true, it does appear that the Plaintiffs have sufficiently alleged acts of mail and/or wire fraud by the Defendants.

The Defendants argue that Plaintiffs cannot state a RICO claim because they have not alleged the fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires allegations of fraud to be pled with particularity as to the time, place and contents of the false representations, the identity of the person making those representations, and what was obtained by the fraud. *Harrison v. Savannah Westinghouse River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). The plaintiff may allege the true facts and defendant's mental state generally. *Id.* A fraud claim will survive a motion to dismiss under Rule 9(b) if "the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

The Plaintiffs in this case have satisfied their burden of pleading fraud with particularity under Rule 9(b) as to Defendant Carroll. As noted above, they do plead at least one specific instance of wire fraud and two specific instances of mail fraud, complete with the time, place and contents of the false representations, as well as the identity of the person who made them. In addition, they allege many other such instances with somewhat less particularity, although they do provide lists of dates of phone calls and other communications.

However, the Plaintiffs do not allege with specificity that any of these communications were with anyone other than Defendant Carroll.[4] Instead, as to the remaining individual

---

[4] The two letters that Plaintiffs attach to the Complaint, which contain alleged false statements, were both signed by Defendant Carroll.

defendants, the Plaintiffs simply allege that "the Individual Defendants" made the same representations as those attributed specifically to Defendant Carroll on any one or more of several dates listed. (Compl. ¶¶ 25, 101, 111, 119.) These allegations are insufficient under Rule 9(b) to state a claim against the individual Defendants other than Mr. Carroll. *See Cooke & Moses, LLC v. QSS-Engineered Systems Group, LLC*, 2007 WL 2463288, *7 n.4 (N.D.W.Va. 2007) ("This Court has previously reasoned that, when plaintiffs make fraud-based claims against multiple defendants, 'the plaintiff must plead with specificity against each defendant ...' and allegations made against 'undifferentiated "defendants" violate this rule.'" (*quoting Tri-County Elec. Co., Inc. v. Dean*, 1994 WL 653489, *4 (N.D.W.Va.1994)); *see also Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (failure to connect alleged misrepresentation to particular defendant does not meet the requirements of Rule 9(b)).

### c. Pattern of racketeering activity

The most critical element of a RICO violation is to show a "pattern of racketeering activity." A "pattern of racketeering activity" means "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961 (5).

Courts look to the pattern element in order to identify the types of claims that Congress intended RICO to cover. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 236 (1989) ("[W]e suggested that RICO's expansive uses 'appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of "pattern."'") (quoting *Sedima*, 473 U.S. at 500).

-11-

The Fourth Circuit has stated that RICO liability should be imposed only when there are "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). The Fourth Circuit has on several occasions cautioned against finding a RICO violation in a "garden variety fraud," especially when the alleged pattern of racketeering relies solely on predicate acts of mail or wire fraud. *E.g.*, *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir.2000) ("However, we are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." (internal quotations and citation omitted)); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) ("[T]his circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims [because] . . . the heightened civil and criminal penalties of RICO are reserved for schemes whose scope and persistence set them above the routine." (internal quotation omitted)).[5]

---

[5] A majority of the other circuits have taken the same approach as the Fourth Circuit with respect to finding patterns of racketeering from predicate acts of mail and wire fraud. *See, e.g.*, *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir.2000) ("We note that courts, including our own, have suggested that RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024-25 (7th Cir.1992) ("Indeed, mail and wire fraud allegations are unique among predicate acts because multiplicity of such acts may be no indication of the requisite continuity of the underlying fraudulent activity. Consequently, we do not look favorably on many instances of mail and wire fraud to form a pattern." (internal quotations and citation omitted)); *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991)("Bankers do not become racketeers by acting like bankers. We agree with the statement by the Fourth Circuit that 'If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim. If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless.'" (quoting *Menasco*, 886 F.2d at 685); *Barrett v. Tallon*, 30 F.3d 1296 (10th Cir. 1994) (affirming district court's dismissal of RICO claims because "the plaintiffs attempted to dress a garden-variety state fraud and/or conversion case in RICO clothing.") (internal quotations omitted)); *Robert Suris General Contractor Corp. v. New Metropolitan Federal Sav. & Loan Ass'n*, 873 F.2d 1401, 1404 (11th Cir. 1989) (affirming district court's grant of summary judgment, where the district court held that, "Plaintiff has taken a simple breach of contract or garden-variety fraud claim and attempted to boot-strap it into a 'federal case' by couching the allegations in [RICO] statutory language. This is not the

-12-

In this case, the parties have focused largely on the issue of whether Plaintiffs have sufficiently pled a pattern of racketeering activity. The Plaintiffs contend that the Defendants operated a wide-spread and extensive scheme to defraud many investors, not just themselves, and that this type of activity is properly addressed as a civil RICO claim. Defendants, on the other hand, argue that the Plaintiffs are trying to "dress up" into a federal RICO claim a "garden-variety" fraud claim that really belongs in state court.

*H.J. Inc., supra*, sets out the standard to determine whether a pattern of racketeering activity exists. In *H.J. Inc.*, the Supreme Court rejected the proposition that a pattern may consist of only two predicate acts of racketeering, but also rejected the proposition that a pattern could only be found where the perpetrator of the predicate acts was actually involved in organized crime. 492 U.S. at 236-37. Instead, the Court concluded that "to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis in original).

The Court explained that the relationship prong is satisfied by showing "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (adopting the definition from 18 U.S.C. § 3575 (e)).

The Court explained the continuity prong as follows:

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the

---

purpose for which RICO was enacted."); *Western Associates Ltd. Partnership v. Market Square Associates*, 235 F.3d 629, 637 (D.C. Cir. 2001) ("Although a RICO claim may be based only on predicate acts consisting exclusively of mail and wire fraud, scrutiny of such claims is necessary, and not inconsistent with the breadth of RICO. The pattern requirement thus helps to prevent ordinary business disputes from becoming viable RICO claims, with defendants subject to treble damages, simply because the parties used the United States mails or a fax machine to transmit contested financial documents.").

Case 3:08-cv-00031-NKM-BWC   Document 32   Filed 11/06/08   Page 13 of 21   Pageid#: 328

future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Id.* at 241-242. The Court emphasized that the continuity prong is a fact-specific determination, *id.* at 242, but that continuity can be found "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business," *id.* at 243.

The Fourth Circuit has stated that there are no "mechanical rules" to determine whether a pattern of racketeering has been shown, but that it is "a matter of criminal dimension and degree to be decided on a case-by-case basis." *Parcoil Corp. v. NOWSCO Well Service, Ltd.*, 887 F.2d 502, 504 (4th Cir. 1989). Courts should consider several factors in making this determination, including "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir.1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Such factors should be considered along with "all the facts and circumstances of the particular case-with special attention to the context in which the predicate acts occurred." *Id.* The Fourth Circuit has "rejected RICO pattern claims when plaintiffs have failed to show with specificity the existence of a distinct threat of continuing racketeering activity." *Professionals, Inc. v. Berry*, 1992 WL 64796, *3 (4th Cir. 1992).

This is a very close case with regard to whether Plaintiffs have adequately shown a pattern of racketeering activity. Both parties point to a number of cases in support of their respective positions. However, whether a pattern of racketeering has been shown is a highly

-14-

fact-dependent determination. Because none of the cases discussed by the parties present exactly the same facts as the instant case, they are of only limited value in resolving this issue. Here, the scheme alleged by the Plaintiffs lasted at least three years. The predicate acts are all related to each other and to the scheme to defraud. The Plaintiffs allege that the Defendants' normal course of doing business involved making the same false representations that Defendants' made to Plaintiffs. These factors come close to meeting the "relationship plus continuity" test required to find a pattern.

However, the pattern alleged by the Plaintiffs is based solely on predicate acts of wire and mail fraud. Such cases require closer scrutiny before concluding that Plaintiffs have shown a pattern of racketeering activity. When considering the alleged scheme at issue in this case, it does not appear to be the type of social evil meant to be addressed by RICO. *See Al-Abood, supra.* While Plaintiffs allege that the scheme was directed at other victims besides themselves, those allegations are too speculative to support a finding of a pattern of racketeering activity. The Plaintiffs cannot allege with specificity that Defendants victimized anyone besides themselves. The Plaintiffs provide no names, dates, or places with regard to any other victims. *See Orteck Intern. Inc. v. TransPacific Tire & Wheel, Inc.*, 2006 WL 2572474, *18 (D.Md. 2006) (holding that no pattern was established despite plaintiffs' allegations that defendants operated similar fraudulent schemes against other victims, because "Plaintiffs do not plead the fraud claims involving these other companies with adequate specificity"). The Plaintiffs indicate in their complaint that they must rely on further discovery to identify other victims of Defendants' scheme. (Compl. ¶ 84.) This is insufficient to broaden the scope of the scheme beyond the Plaintiffs. *See Menasco*, 886 F.2d at 684 (holding that no pattern of racketeering existed and that allegations that defendants defrauded "various individuals" other than plaintiffs were too vague

-15-

to show threat of continuing racketeering activity); *Friedler v. Cole*, 2005 WL 465089, *10

(D.Md. 2005) (holding no pattern of racketeering existed because defendants' scheme was

directed only at the two plaintiffs, and that allegation that there may be other victims, who may

be revealed through the discovery process, were too vague to establish a pattern).

It is also notable that while Plaintiffs allege lost profits, they do not allege that they

actually took losses on these real estate deals. Rather, it appears that the Plaintiffs' main

complaint is that while they did make profits on their sales of property, they did not make as

much profit as they think they should have. And although Plaintiffs purchased several properties

they otherwise would not have, had they known all the material facts, they do not allege that the

properties were entirely worthless. While this scenario may still be actionable as fraud, it does

not appear to rise to the level of a RICO violation, which would subject the Defendants to the

possibility of treble damages. The Fourth Circuit has failed to find a RICO pattern in cases

involving much greater losses to the plaintiffs. *See, e.g., GE Investment, supra.* Therefore,

having considered the factors at issue and the facts of the case as alleged by the Plaintiffs, I

conclude that the Plaintiffs have failed to allege a pattern of racketeering activity, and that this

case does not fall "sufficiently outside the heartland of fraud cases to warrant RICO treatment."

*Al-Abood*, 217 F.3d at 238.

## 2. *Investment of Proceeds of Racketeering Activity*

The RICO statute also prohibits anyone who derives income from a pattern of

racketeering activity to use or invest that income in the acquisition, establishment or operation of

any enterprise that is engaged in or affects interstate commerce. 18 U.S.C. § 1962 (a).[6] In order

---

[6] 18 U.S.C. § 1962(a) provides that: "It shall be unlawful for any person who has received any income derived,
directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such
person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest,
directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or

-16-

to prove a violation under this subsection, the Plaintiffs must show that Defendants: (1) derived income from a pattern of racketeering activity; (2) used or invested the income, directly or indirectly, in the establishment and operation, (3) of an enterprise, (4) which was engaged in or affected interstate commerce. *See United States v. Vogt*, 910 F.2d 1184, 1194 (4th Cir. 1990). The Plaintiffs must also show that they were harmed by the alleged violation of this subsection. 18 U.S.C. § 1964 (c).

Plaintiffs bring a claim under this sub-section against all the individual defendants and Wintergreen. In contrast to a claim under § 1962 (c), the RICO enterprise may also be a defendant in a claim under § 1962 (a). *Busby*, 896 F.2d at 841. However, because the Plaintiffs have not established a pattern of racketeering activity, as discussed *supra*, they cannot state a claim under this subsection. Therefore, this count will be dismissed.

### 3. Conspiracy to violate RICO

18 U.S.C. § 1962 (d) provides that, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Thus, the elements of a claim under this subsection are: (1) knowledge of the general nature of the conspiracy; (2) agreement by the defendant: (a) to personally commit a violation of sections 1962(a)-(c); (b) to aid or abet a violation; or (c) that another co-conspirator commit a violation; and (3) injury caused by an act in furtherance of the conspiracy. *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528, 560 (D.Md. 1996) (*citing United States v. Pryba*, 900 F.2d 748, 760 (4th Cir.), *cert. denied*, 498 U.S. 924 (1990). General principles of conspiracy apply, and proof of an overt act is not required. *Salinas v. United States*, 522 U.S. 52, 62 *et seq.* (1997).

---

the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

Case 3:08-cv-00031-NKM-BWC   Document 32   Filed 11/06/08   Page 17 of 21   Pageid#: 332

Because the Plaintiffs have not stated a claim under one of the other substantive provisions of RICO, then the conspiracy claim necessarily fails. *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001) (*citing Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000), *cert. denied*, 532 U.S. 905 (2001)). Therefore, this count of the complaint will be dismissed.

### B.    Lanham Act Claims

The purpose of the federal Lanham Act is to prohibit unfair competition and false, deceptive or misleading use of registered marks in commerce. 15 U.S.C. § 1127. The Lanham Act creates a civil remedy for certain unfair trade practices in the following provision:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

The Plaintiffs claim that they were damaged, in the form of lost profits, by the false advertising of the Defendants, as described in the summary of facts above. The Defendants moved to dismiss this claim on the basis that the Plaintiffs lack standing to sue under the Lanham Act, because they are consumers. Plaintiffs contend that they do, in fact, have standing under the Act, because their commercial interests were harmed by the Defendants' activities.

The Fourth Circuit has squarely held that consumers do not have standing to sue under

Case 3:08-cv-00031-NKM-BWC   Document 32   Filed 11/06/08   Page 18 of 21   Pageid#: 333

the Lanham Act. *Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F.3d 278, 281 (4th Cir. 2004). Defendants contend that Plaintiffs were consumers of the Defendants' product (their real estate services), and as such, cannot have standing to sue under the Lanham Act. It does not appear that the Fourth Circuit has directly addressed the question of who *does* have standing under the Lanham Act. Other circuits agree, however, that commercial entities have standing to sue direct competitors. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 561-562 (5th Cir.2001); *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 229 (3d Cir.1998); *Stanfield v. Osborne Indus.*, 52 F.3d 867, 873 (10th Cir.1995).

Some circuits have held that commercial entities whose commercial interests are harmed by a violation of the Act have standing to sue, even when not direct competitors. *E.g., Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir.1986) (holding that a trade group had standing to sue a coat manufacturer, because the trade group had "a strong interest in preserving cashmere's reputation as a high quality fibre"); *Berni v. Int'l Gourmet Restaurants of America, Inc.*, 838 F.2d 642, 648 (2d Cir.1988) ("Although a [Lanham Act] plaintiff need not be a direct competitor ... standing to bring a ... claim requires the potential for commercial or competitive injury.").

In *Made in the USA*, the Fourth Circuit explained that *Camel Hair* stands for the proposition that "a Lanham Act plaintiff must be suing to protect a commercial interest." 365 F.3d at 280. The Fourth Circuit has elsewhere noted that the Lanham Act provides "a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed **by a competitor's false advertising**." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir.1993) (*quoting Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir.1990)) (emphasis added). It is therefore

-19-

unclear whether the Fourth Circuit would extend a Lanham Act remedy to a non-consumer, non-competitor Plaintiff whose commercial interests have been harmed by another entity's unfair trade practices.

It is clear that in this case, the Plaintiffs and Defendants were not direct competitors, and it is difficult to imagine how the Plaintiffs might have had any relationship with the Defendants other than as a consumer. The Plaintiffs argue that they entered into a "business relationship" with Defendants, but do not specify the nature of that relationship. There is no indication that Plaintiffs and Defendants were partners or otherwise associated to form a commercial entity. It appears only that the Plaintiffs engaged Defendants as their real estate brokers, and as such were consumers of Defendants' services. While Defendants' alleged conduct may have caused a conflict of interest, in that they represented both Plaintiffs and prospective purchasers in several transactions, there does not appear to have been any competition between them. Therefore, the Plaintiffs do not have standing to sue under the Lanham Act, and this count of the complaint will be dismissed.

### C.     State Law Claims

The remainder of the Plaintiffs' claims arise under state law. The Defendants have urged the court, should it dismiss the Plaintiffs' claims under federal law, not to exercise supplemental jurisdiction over the remaining state law claims. In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Having considered those factors, I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and those claims will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

Case 3:08-cv-00031-NKM-BWC   Document 32   Filed 11/06/08   Page 20 of 21   Pageid#: 335

## IV. CONCLUSION

For the reasons stated herein, the Court will grant the instant Motion (docket no. 13). An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record

ENTERED: This _6th_ Day of November, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

-21-